IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Jerry Dalton,<br><br>                Plaintiff,<br><br>vs.<br><br>World Acceptance Corporation,<br><br>                Defendant. | Civil Action No. 8:11-2041-MGL-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 27). In his complaint, the plaintiff alleges claims against his former employer for age and religious discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964, as amended.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2)(g) DSC, all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

On March 13, 2012, the defendant filed a motion for summary judgment (doc. 27), and on April 23, 2012, the plaintiff filed a response in opposition (doc. 36). On May 1, 2012, the defendant filed a reply to the plaintiff's response (doc. 42).

## FACTS PRESENTED

The plaintiff's employment history with the defendant World Acceptance Corporation, a small loan consumer finance company, began in July 1980 (Dalton dep. 66; Dalton emp. app. 4). The plaintiff was re-hired by the defendant in 2002 by Josh Fields and John Downs. At that time, the plaintiff was 45 years of age (pl. dep. 150). Downs is one of the individuals the plaintiff claims discriminated against him based on his age (*id.* 144-45, 148).

Since 1983, the plaintiff has served as the pastor of various Christian non-denominational churches in South Carolina and Georgia (*id.* 70). At all times relevant to this case, the plaintiff was the pastor of Solid Rock Community Church ("SRCC") in Calhoun Falls, South Carolina (*id.* 13). During his employment with the defendant, the plaintiff was initially paid for his pastoral duties by SRCC. Some time before his employment with the defendant was terminated, the plaintiff informed SRCC that because he was earning enough money from the defendant, he declined to receive further payments for his pastoral duties (*id.* 137-38).

At the time he was re-hired by the defendant in 2002, the plaintiff reached an agreement with his branch manager at the time, Josh Fields, and his district manager, John Downs, that he would be hired as a full-time assistant branch manager but would transition to a part-time role where he would not work on Tuesdays, Wednesdays, or Saturdays (*id.* 14-16). The plaintiff asked that he not work on these days so that he could perform the ministerial duties associated with his employment as the pastor of SRCC (*id.*). On Tuesdays and Wednesdays, the plaintiff would study scripture and seek new members for his church (*id.* 168). The plaintiff stated that Sunday is the Sabbath, observed by all members of the plaintiff's church and family. The plaintiff stated that he elected to make Saturday his day of "prayer and rest" because he worked on Sundays at the church. The plaintiff stated that there was no scriptural basis for his decision and that it was merely his "choice" (*id.* 18, 90-92, 112, 196, 215-17). The plaintiff worked the Monday, Tuesday, Friday, part-time schedule until his employment was terminated (*id*. 194). The plaintiff concedes that he was never required to work on any religious holidays, or on any Saturdays, though he did voluntarily work Saturdays on at least two occasions, one day with pay and one day without pay (pl. dep. 197-98, 201-202; Cooper dep. 12).

After 2005, Kenny Cooper became the plaintiff's branch manager, and he was the plaintiff's branch manager for the remainder of his employment with the defendant (pl.

2

dep. 148-49). The plaintiff testified that after Cooper became his supervisor, Cooper stated that he wished he had the plaintiff's schedule so he could be off work. The plaintiff perceived this as a derogatory comment about him being allowed to be off work to accommodate his pastoral duties. The plaintiff was working 30 hours per week and Cooper was working a lot more hours per week (pl. dep. 207). On January 22, 2010, Cooper requested that the plaintiff work on Saturday, January 23, 2010. The plaintiff informed Cooper that he could not work on Saturday due to his pastoral duties (*id.* 223-24). Cooper stated in his deposition that he recalled the plaintiff refusing to work on a Saturday when he asked him to do so. Cooper testified as follows: "No. I couldn't give you the exact date. I can tell you what he said, and his words was that him and his wife had talked about it. He did not have to, and he wasn't going to work on Saturdays" (Cooper dep. 16). Cooper further testified that the plaintiff had worked a couple of Saturdays for him voluntarily in the past (*id.* 12; *see also* pl. dep. 197-98, 201-202).

On March 4, 2010, Cooper and District Manager Downs informed the plaintiff that he was being laid off, effective at the end of the month (pl. dep. 159-60; Cooper dep. 15; Cooper decl. ¶ 5; comp. ¶ 13). The plaintiff testified that he was told at that time that he was being laid off because the defendant could not "afford to pay because of the high salaries in this branch" (pl. dep. 215).

Cooper testified that he decided to eliminate the plaintiff's part-time assistant branch manager position based on the branch-staffing formulas that the defendant's branch managers are required to use. The formulas are based on the number of accounts serviced by the branch (Cooper decl. ¶¶ 6-8). In early 2010, the formulas indicated that the Abbeville Branch needed more manpower (*id.* ¶ 8). Specifically, Cooper had to add another half-employee equivalent (*id.*). Because of the additional cost and burden of adding another part-time assistant branch manager, Cooper determined that adding a full-time assistant branch manager and eliminating the part-time assistant branch manager position was the

3

least costly alternative (*id.*). An essential function of the full-time assistant branch manager's job is being available for occasional Saturday work during the busy periods, November-December, and tax season (*id.* ¶ 9). Cooper understood that the plaintiff did not want to work on Saturdays because of his duties as a pastor at SRCC and, therefore, did not initially consider him for the full-time position (*id.* ¶ 10). Cooper advertised for the full-time assistant branch manager position and eventually hired Tammy Brownlee, who was in her late 30's or early 40's, in February 2010 (*id.*; Cooper dep. 20).

After being told he was being laid off, the plaintiff inquired about whether he could be hired into a full-time position in the Abbeville Branch (Cooper decl. ¶ 11; Cooper dep. 215; pl. dep. 215). Cooper and Downs told the plaintiff that the defendant would place him in the full-time position in the Abbeville Branch if he wanted the job (Cooper decl. ¶ 11; pl. dep. 215). The plaintiff wanted to take two of his regularly-scheduled work days off to consider the option, which Cooper granted (Cooper decl. ¶ 11; pl. dep. 215). When he returned to work the following week, the plaintiff informed Cooper that he could not accept the full-time position because of his pastoral duties (Cooper decl. ¶ 11). According to Cooper, had the plaintiff accepted the full-time position, Brownlee, the most junior full-time assistant branch manager in the branch, would have been transferred to another branch or her position would have been eliminated (*id.* ¶ 13). The plaintiff's part-time duties were eventually absorbed by the other full-time assistant branch managers in the office (*id.* ¶ 14). Since the elimination of the plaintiff's position, the defendant has not hired another part-time assistant branch manager for its Abbeville branch (*id.* ¶ 15). Brownlee was discharged from employment due to absenteeism approximately one to two months after she began work (Cooper dep. 11).

In his deposition, Cooper stated that the plaintiff was a good employee (Cooper dep. 5). Further, Cooper stated that approximately a year prior to the plaintiff's

4

termination from employment, the plaintiff received a substantial raise in his bonuses (*id.* 6).

At the time of his termination from employment, the plaintiff was 52 years old and the oldest employee in the branch (pl. dep. 209; comp. ¶ 2). According to the plaintiff, District Manager Downs "on a regular basis" in e-mails[1] about the plaintiff's positive performance referred to the plaintiff as "the old man" (pl. dep. 209-12). The plaintiff testified as follows in his deposition:

> Q. Other than what you claim you were told by Kenny Cooper and John Downs, do you have any other information about why your position was eliminated?
>
> A. No.
>
> Q. Do you know who made the decision to eliminate the part-time position you held?
>
> A. I don't know.
>
> Q. And you don't know when that decision was made, do you?
>
> A. It was sometime after I refused to work that Saturday.
>
> Q. But you know when you were informed of it, right?
>
> A. Yes.
>
> Q. But you don't know when the decision was actually made, do you?
>
> A. No.
>
> Q. And you don't know what factors were considered in eliminating the position, do you?
>
> A. No.

---

[1] The plaintiff did not provide the referenced emails as evidence supporting his opposition to the motion for summary judgment. The defendant states in its motion that "[t]hese emails, to the extent that they ever existed, were not the subject of Dalton's limited discovery efforts" (def. m.s.j. 9 n.4).

> Q. You weren't in any meetings --
>
> A. No.
>
> Q. -- when the decision to eliminate the position was discussed, were you?
>
> A. No.
>
> Q. And you don't know what weight any of those factors may have been given, do you?
>
> A. No.

(Pl. dep. 229-30).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Age Discrimination*

To survive summary judgment, the plaintiff must show that there is a genuine issue of material fact that the defendant discriminated against him due to his age. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Under the ADEA, a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).  A plaintiff can prove the claim either through direct or circumstantial evidence, *see Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or by the *McDonnell Douglas* burden-shifting framework, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Here, both parties utilized the *McDonnell Douglas* framework in their analyses.

Under this framework, the plaintiff must first satisfy the elements of a *prima facie* case of age discrimination. 411 U.S. at 802.  If the plaintiff satisfies this initial burden, then the burden of production shifts to the employer to show that its decision to terminate the plaintiff is based on a legitimate, non-discriminatory reason. *Hill*, 354 F.3d at 285.  The burden then shifts back to the plaintiff who must prove by a preponderance of the evidence that the reason given is a pretext for age discrimination. *Id*.  To establish a *prima facie* case

of age discrimination under the ADEA, a plaintiff must demonstrate that: "(1) he is a member of the protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at the level that met the employer's legitimate expectations; and (4) he was discharged under circumstances that raise a reasonable inference of unlawful discrimination." *Brown v. City of Columbia*, C.A. No. 3:10-cv-2860-JFA, 2012 WL 3838109, at *2 (D.S.C. Sept. 4, 2012) (slip copy) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310–12 (1996)). In cases involving a reduction in force case, the fourth element may be satisfied by showing that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding upon how to implement the reduction in force. *Herold v. Hajoca Corp.*, 864 F.2d 317, 320 (4th Cir. 1988).

The plaintiff's age discrimination claim is based on his assertions that: (1) he was replaced by a younger person, Tammy Brownlee; (2) that he was told that the reason his position was eliminated was because of the high salaries in the Abbeville branch; and (3) alleged comments by District Manager John Downs referring to the plaintiff as "old man," beginning in 2001 (comp. ¶¶ 16, 20, 22).

Clearly, the plaintiff meets the first three elements of a *prima facie* case of age discrimination. However, the plaintiff has failed to establish the fourth element. First, he claims that he was replaced by a younger, less qualified person (Brownlee). However, the undisputed evidence shows Brownlee was hired as a full-time assistant branch manager before the plaintiff's part-time assistant branch manager position was eliminated, and she was performing her full-time duties at the time the plaintiff's part-time position was eliminated (Cooper decl. ¶ 12). Moreover, the plaintiff admits that he was, in fact, offered a full-time assistant branch manager position when he inquired about it, and he turned down the position (pl. dep. 215). Since the elimination of the plaintiff's position, it is undisputed that the defendant has not hired another part-time assistant branch manager for its

8

Abbeville branch (Cooper decl. ¶ 15). The plaintiff argues that the "[t]emporal proximity from the time he refused to work on Saturday, January 23, 2010, until the time he was informed his position was going to be eliminated . . . is sufficient evidence that [the defendant] did not treat [him] age neutrally . . . ." It is unclear to the court how the "temporal proximity" between these two events is evidence of *age* discrimination.[2]

The plaintiff also alleges that Downs referred to him in emails as "old man" (pl. dep. 208-12). The alleged emails were not submitted by the plaintiff in support of his opposition to the motion for summary judgment. The plaintiff acknowledged in his deposition that the emails actually praised his performance and that Downs was the individual who approved his raises and bonuses throughout his employment (*id.*). The plaintiff never complained to Cooper about the emails (Cooper decl. ¶ 16). Further, there is no evidence suggesting the emails were related in any manner to the elimination of the plaintiff's position, and, as such, they amount to nothing more than "stray remarks" evincing no discriminatory intent. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (ADEA case finding that stray remarks unconnected to employment decision at issue and remote in time are not enough to survive summary judgment and noting that "statements about age may well not carry the same animus as those about race or gender… barring unfortunate events, everyone will enter the protected age group at some point in their lives."); *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548-50 (4th Cir. 1995), *rev'd on other grounds by*, 517 U.S. 308 (1996) (ADEA case finding that supervisor's remarks were insufficient evidence of discriminatory intent because the remarks were not made in the context of replacing the plaintiff).

---

[2]The plaintiff also argues, "World's position that Dalton cannot prove that the part time assistant manager's [position] was eliminated is ludicrous. Under such circumstances, arguing such a defense strains the limits of good faith under the Rules" (pl. resp. m.s.j. 10). The plaintiff's argument makes no sense as the defendant argued throughout the motion for summary judgment that the plaintiff's part-time position *was* eliminated (*see* def. m.s.j. 1-22; *see also* answer ¶ 16 ("World Acceptance admits that Dalton's part-time Assistant Branch Manager position was eliminated as part of a cost-cutting effort for the Abbeville branch.")).

The plaintiff also claims that Downs told him that part of the reason his position was being eliminated was the "high salaries" in the Abbeville branch (pl. dep. 214-16), and he argues that this evinces age animus. As noted by the defendant, this comment is consistent with Cooper's concern regarding the additional cost of having two part-time assistant managers rather than one full-time assistant manager. Further, "high salaries" are not a proxy for age discrimination:

> [C]omments relating to an employee's higher level of compensation have been construed to establish an economic concern, rather than age-based animus. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). There is no inference of intentional discrimination to be drawn when an employer considers factors that may correlate with age. *See id.* at 608–611; *Denio v. Asplundh Tree Expert Co.*, No. 95–1904, 1996 WL 423125, at *3 (4th Cir. July 30, 1996) (unpublished). Thus, even if the [defendant's] decision was motivated by a desire to reduce its salary costs, this does not support a claim of disparate treatment under the ADEA.

*Blackburn v. Wise County School Bd.*, No. 2:11cv00033, 2012 WL 1309406, at *3 (W.D.Va. April 17, 2012). Based upon the foregoing, the plaintiff has failed to demonstrate that he was discharged under circumstances that raise a reasonable inference of unlawful age discrimination.

The defendant has met its burden of production to show that its decision to terminate the plaintiff was based on a legitimate, non-discriminatory reason. Cooper testified that he decided to eliminate the plaintiff's part-time assistant branch manager position because the branch-staffing formulas indicated that the Abbeville Branch needed more manpower (Cooper decl. ¶ 8). Specifically, Cooper had to add another half-employee equivalent (*id.*). Because of the additional cost and burden of adding another part-time assistant branch manager, Cooper determined that adding a full-time assistant branch manager and eliminating the part-time assistant branch manager position was the least costly alternative (*id.*).

The plaintiff has failed to show that the defendant's stated reasons for eliminating his position were pretext for age discrimination. The plaintiff ridicules Cooper's un-rebutted testimony regarding the branch staffing formulas, arguing that Cooper failed to "provide any documentary evidence to substantiate" his statements (pl. resp. m.s.j. 6; *see also* pl. resp. m.s.j. 12). As noted by the defendant, the plaintiff misapplies the burdens of proof. Under the *McDonnell-Douglas* burden-shifting framework, the defendant has only a burden of production while the burden of persuasion rests entirely and continually on the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-507 (1993). The plaintiff admitted that he does not know the factors considered by the defendant, what weight those factors were given, who made the decision to terminate his employment, or when that decision was made (pl. dep. 229-30). The plaintiff has only his conjecture, but no evidence, that the defendant's explanation is a pretext for discrimination.

Moreover, as Downs was the same individual who hired the plaintiff in 2002, and, as noted above, he approved the plaintiff's raises and bonuses throughout his employment (pl. dep. 208-12), a presumption arises in favor of the defendant that the elimination of the plaintiff's position was not pretextual. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (finding that "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."). Furthermore, in the year prior to his position being eliminated, the plaintiff received a substantial raise in his bonuses (Cooper dep. 5-6). *See Jones v. Dole Food Co., Inc.*, 827 F.Supp.2d 532, 549 (W.D.N.C. 2011) (noting in Title VII case that presumption in favor of defendants under *Proud v. Stone* was even stronger where person who both hired and fired the plaintiff gave the plaintiff a merit increase just months before he fired the plaintiff). Viewing the evidence in a light most favorable to the plaintiff, no reasonable factfinder could determine that "but for" his age, the

plaintiff's position would not have been eliminated and his employment would not have been terminated. Accordingly, summary judgment is appropriate on the ADEA claim.

***Religious Discrimination***

In order to establish a *prima facie* case of discrimination, the plaintiff must show (1) that he is a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he was subjected to an adverse employment action; and (4) that other employees who were not members of his protected class were treated more favorably, that he was replaced (in the case of a discharge claim) by someone from outside of his protected class, or that there is some other evidence giving rise to an inference of unlawful discrimination. *Chambers v. Medical University Hosp. Auth.*, C.A. No. 2:11-cv-261-RMG, 2012 WL 2888802, at *4 (D.S.C. July 13, 2012) (citations omitted). In cases involving a reduction in force case, the fourth element may be satisfied by showing that persons outside the protected class were retained in the same position or that there was some other evidence that the employer did not treat religion neutrally in deciding upon how to implement the reduction in force. *Corti v. Storage Technology Corp.*, 304 F.3d 336, 340 n.6 (4th Cir. 2002) (citation omitted). Once a plaintiff establishes a *prima facie* case of discrimination, "the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (citation omitted). If the employer carries this burden, the plaintiff must then "prove by a preponderance of the evidence that the neutral reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id*. (quotation omitted).

12

The plaintiff's claim for religious discrimination is limited by the scope of his EEOC charge[3]. *Brown v. Berkeley County School Dist.*, 339 F. Supp.2d 715, 721-23 (D.S.C. 2004) (holding that vague statements in an EEOC charge do not bring claims not specified in the charge within the scope of the rule). The plaintiff's charge alleges only two adverse employment actions: (1) that he was laid off on March 31, 2010; and (2) that he was not provided a transfer to the McCormick or Greenwood branches (def. m.s.j., ex. H). The plaintiff concedes that he never inquired about a transfer and does not know if those branches had any part-time assistant branch manager positions open, rendering his "failure-to-transfer" claim, to the extent it is alleged in his complaint, subject to dismissal (pl. dep. 204, 228-29).

The plaintiff concedes the following:

(1) As a Christian, which he professes to be, the Sabbath is celebrated on Sunday, a day on which he was never required to work (pl. dep. 200);

(2) His wife and children, members of the same church and religion as himself, observe the Sabbath on Sunday, as do all members of his church (*id.* 29, 32, 201);

(3) His personal decision to make Saturday a day of "worship and rest" is not a teaching of the church (*id.* 91-92);

(4) He is unable to work on Saturdays because, as a pastor of SRCC, he works on Sunday and, therefore, does not have his day of prayer and rest on Sunday (*id.* 216-17);

(5) He does not know of anyone working for the defendant who is not a Christian who was treated more favorably than he was (*id.* 224); and

---

[3]In his response in opposition to the motion for summary judgment, the plaintiff analyzes his religious discrimination claim as a disparate treatment claim and does not argue that he alleged a failure to accommodate claim (pl. resp. m.s.j. 7-10).

(6) He does not know the religion of Brownlee, the full-time assistant branch manager whom he alleges replaced him (*id.* 224).

The plaintiff argues that an inference of religious discrimination arises from the temporal proximity between his refusal to work on Saturday, January 23, 2010, and March 4, 2010, the day he was informed that his position was being eliminated. Here, even assuming for purposes of this motion that the plaintiff can establish a *prima facie* case of disparate treatment based on religion, summary judgment is appropriate because the plaintiff cannot show that the defendant's decision to eliminate the part-time assistant branch manager position was pretext for religious discrimination. The defendant articulated the reason for the elimination of the position was that its corporate branch-staffing formulas indicated that the Abbeville branch needed to add another full-time assistant branch manager, but it could not retain a part-time assistant branch manager with that addition (Cooper decl. ¶ 8). The plaintiff admitted that he does not know what factors the defendant considered in making the decision to eliminate his position (pl. dep. 229-30), and he has presented absolutely no evidence that the articulated reason was pretext for religious discrimination. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross,* 759 F.2d at 365.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment (doc. 27) be granted.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

October 30, 2012
Greenville, South Carolina

14